ORIGINAL SEALED
BY ORDER OF THE COURT

JMS

THIS DOCUMENT FILED UNDER SEAL PURSUANT TO
AMENDED GENERAL ORDER REGARDING GUIDELINE SENTENCING
filed on August 22, 1990

MIYOSHI & HIRONAKA, LLLC
Attorneys at Law

RECEIVED BY OVERNIGHT FILING

RANDALL K. HIRONAKA  7444
345 Queen Street, Suite 600
Honolulu, Hawai'i  96813
Telephone:  (808) 888-2595
Facsimile:   (808) 599-1645
E-mail:       randy@808-law.com

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 1 2 2020

at 10 o'clock and 34 min. P M
SUE BEITIA, CLERK

Attorney for Defendant
MINH-HUNG NGUYEN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CR. No. 17-00582 JMS |
| | ) |
| vs. | ) DEFENDANT MINH-HUNG |
| | ) NGUYEN's SENTENCING |
| MINH-HUNG NGUYEN (4), | ) MEMORANDUM; DECLARATION |
| | ) OF COUNSEL and CERTIFICATE |
| Defendant. | ) OF SERVICE |
| | ) |
| | ) Date:  March 18, 2020 |
| | ) Time:  1:30 p.m. |
| | ) Judge: J. Michael Seabright |
| | ) |
| _____ | ) [UNDER SEAL] |

DEFENDANT MINH-HUNG NGUYEN's SENTENCING MEMORANDUM

ORIGINAL

USDC MAR 12 '20 10:34PM

## DEFENDANT MINH-HUNG NGUYEN's SENTENCING MEMORANDUM

Defendant Minh-Hung "Bobby" Nguyen was a footman with the Honolulu Police Department ("HPD"). The day he graduated from the Academy, he was a footman assigned to work patrol. Thirteen years later, having never been promoted, he remained at the rank of footman until the day he was terminated from HPD.

As a footman, Mr. Nguyen did not wield significant power. He possessed police powers, to be sure, however, Mr. Nguyen had no authority over others. He had command over no one. He was outranked by everyone.

As a footman in CIU, Mr. Nguyen performed a myriad of menial tasks. He literally would pick up soda for the unit. He took out the trash. Mr. Nguyen did "anti-terrorism work" for a few years, which consisted of doing social media and checks on individuals. He also helped the Secret Service with President Obama's detail when the president would visit Hawaii on vacation. However, for the most part, Mr. Nguyen did whatever he was told to do.

A closer look at the evidence in this case reveals that Mr. Nguyen did the same thing in the instant case -- he did what he was told to do.

To be clear, the defense understands that the foregoing does not serve as a defense to the charges Mr. Nguyen was convicted of (at least, not to the jury which was empaneled). However, these circumstances are still highly relevant to the facts of the case, Mr. Nguyen's applicable guidelines, the 18 U.S.C. §3553(a) factors

and the parsimony clause. As such, they should also be relevant to this Court's determination of Mr. Nguyen's sentence.

Mr. Nguyen stands before this Court for sentencing on one (1) count of Conspiracy to Obstruct Justice in violation of 18 U.S.C. §371 and three (3) counts of Obstruction of an Official Proceeding in violation of 18 U.S.C. §1512(c)(2). Mr. Nguyen's sentence should be based on the factors of 18 U.S.C. §3553(a), in particular, whether the sentence is "sufficient, but not greater than necessary" to meet "the need for the sentence imposed." Focusing on the §3553(a) factors and the parsimony clause, and given that the guidelines already account for Mr. Nguyen going to trial and, in particular, the jury's verdict, a sentence below the advisory guideline range is warranted.[1]

Factual Background

The government contends that, "[a]s a preliminary point, there is no question that seeking to frame an innocent man was the goal of this criminal conspiracy," and that goal "was established beyond a reasonable doubt at trial." The jury clearly rejected these assertions.

The First Superseding Indictment charged four objects of the conspiracy: 1) deprivation of civil rights; 2) obstruction of an official proceeding; 3) false

---

[1] The defense maintains its objection to the 2-level enhancement under USSG §2J1.2(b)(3)(B) and/or (C), which the revised Presentence Report (PSR) of March 2, 2020, assigns. Dkt. No. 964.

statement to government agency; and 4) obstruction of justice. Dkt. No. 164 at 15-16, ¶¶ 27(a)-(d). As this Honorable Court is already aware, the jury only indicated that it unanimously found that the conspirators agreed to commit obstruction of justice as the object of the conspiracy. Framing an innocent man could only have fallen under deprivation of civil rights, obstruction of an official proceeding or false statement to government agency, none of which were proven to be objects of the conspiracy beyond a reasonable doubt.

To understand precisely what the jury convicted Mr. Nguyen of, it is critical to examine the Court's conspiracy jury instructions. This includes not just the elements instruction at Court's Instruction No. 16, but Court's Instructions No. 17 and 18 as well. Per the first element, the conspiracy instruction authorized the jury to find Mr. Nguyen guilty if there was an agreement between two or more people to commit at least one of the crimes as charged in the Indictment. Dkt. No. 824 at 19 (jury instructions p. 18).[2] Essentially, this required the jury to find that a conspiracy existed in the first place.

The second element required the jury to find that Mr. Nguyen became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it. *Id.* (jury instructions p. 18). This element did not require the

---

2  "19" is the document PDF page number as indicated on the top file stamp of the document. The page number listed on the original document at the bottom center of the page is "18."

jury to find that Mr. Nguyen conspired with a co-defendant. At trial, the government specifically elicited evidence from Niall Silva that he conspired with Mr. Nguyen to lie about the recovery of the Kealohas' hard drive. Importantly, the only object of the conspiracy which the jury found was unanimously proven beyond a reasonable doubt was obstruction of justice.

Finally, the third element required the jury to find that one of the members of the conspiracy performed at least one overt act on or after October 19, 2012 for the purpose of carrying out the conspiracy. *Id.* (jury instructions p. 18).

The problem with the government's assertions that "there is no question that seeking to frame an innocent man was the goal of this criminal conspiracy," and that goal "was established beyond a reasonable doubt at trial," is that they are only true if the other allegations in the First Superseding Indictment were proven beyond a reasonable doubt to be true. As we now know, the jury's verdict rejected these contentions. The broad nature of what it takes to be found guilty of conspiracy, as well as the jury's verdict form, strongly contradicts these assertions as well.

It is important to also note the following:

1. For a conspiracy to have existed, it is not necessary that the conspirators...agreed on every detail of the conspiracy. *Id.* at 20 (jury instructions p. 19).

2. You must find that there was a plan to commit at least one of the crimes alleged in the indictment as an object of the conspiracy with all of you

agreeing as to the particular crime which the conspirators agreed to commit. *Id.* (jury instructions p. 19).

3.  One becomes a member of a conspiracy...even though the person does not have full knowledge of all the details of the conspiracy. *Id.* (jury instructions p. 19).

4.  It is not necessary that all members of the conspiracy join it at the same time, and one may become a member of a conspiracy without full knowledge of all the details of the unlawful scheme or the names, identities, or locations of all of the other members. *Id.* at 22. (jury instructions p. 21).

In contrast to the government's position, when all of this is added up, it means that Mr. Nguyen need not have known about any conspiracy to "frame an innocent man." In fact, as is discussed next, it actually means that the jury only found Mr. Nguyen guilty of trying to "cover up" the actions and crimes of other conspirators.

Court's Instruction No. 18 explained to the jury the various alleged "objects" of the conspiracy. The alleged "framing" of Gerard Puana was only covered by the first (deprivation of civil rights), second (obstruction of an official proceeding) and third (false statement to a federal government agency) objects of the conspiracy. As to the deprivation of civil rights object, the instruction specifically read as follows:

> The Fourth Amendment also generally prohibits arrests without a warrant, unless an officer has probable cause to believe that an individual committed a crime. Probable cause is defined as a fair probability that an individual has committed a crime.
>
> A false arrest or false imprisonment violates the Fourth Amendment. A defendant does not have to personally commit the unlawful search,

seizure, or arrest—it is sufficient if a defendant willfully caused one of these acts to be done.

*Id*. at 25-26 (jury instructions p. 24-25). Again, the jury rejected this as an object of the conspiracy. Therefore, it logically follows that the government did not prove beyond a reasonable doubt that Mr. Nguyen was part of a conspiracy to cause Mr. Puana's false arrest in an effort to "frame" him.

As to the obstruction of an official proceeding object of the conspiracy, the instruction specifically read as follows:

> First, the defendant influenced, obstructed, or impeded the due administration of justice in an official proceeding, by making false statements in an ongoing criminal trial against Gerard Puana in the United States District Court for the District of Hawaii, or before the federal grand jury for the District of Hawaii;

> Second, the false statement was material to the official proceeding; that is, it had a natural tendency to influence, or was capable of influencing, the decisions and activities in the criminal case against Gerard Puana in the United States District Court for the District of Hawaii, or before the federal grand jury for the District of Hawaii

*Id*. at 26 (jury instructions p. 25). Again, since the jury rejected this as an object of the conspiracy, it logically follows that the government did not prove beyond a reasonable doubt that Mr. Nguyen was part of a conspiracy to "frame" Mr. Puana by influencing the decisions and activities in either the criminal case against Mr. Puana, or before the grand jury.

As to the false statement to a federal government agency object of the conspiracy, the instruction specifically read as follows:

7

First, the defendant made a false statement;

Second, the statement was made in a matter within the jurisdiction of the Federal Bureau of Investigation (FBI) or the United States Postal Inspection Service (USPIS);

Third, the defendant acted willfully; that is, the defendant acted deliberately and with knowledge both that the statement was untrue and that his or her conduct was unlawful; and,

Fourth, the statement was material to the activities or decisions of the FBI or the USPIS; that is, it had a natural tendency to influence, or was capable of influencing, the FBI's or USPIS's decisions or activities.

*Id.* at 27 (jury instructions p. 26). First, it should be noted that any false statements to the FBI would not have been done as part of a conspiracy to "frame" Mr. Puana, as the FBI's involvement came after the criminal case against him was dismissed. And with respect to any alleged false statements to the USPIS, once again, since the jury rejected this as an object of the conspiracy, it logically follows that the government did not prove beyond a reasonable doubt that Mr. Nguyen was part of a conspiracy to "frame" Mr. Puana by trying to influence the decisions of the USPIS.

What remains, then, is what the jury actually convicted Mr. Nguyen of -- conspiracy to obstruct justice by knowingly altering and falsifying records, documents, and tangible objects with the intent to impede, obstruct, and influence the investigation of a matter within the jurisdiction of a department and agency of the United States. In short, Mr. Nguyen was found guilty of only a "cover up."

This is cemented by the jury's failure to find as objects of the conspiracy: 1) deprivation of civil rights; 2) obstruction of an official proceeding; and 3) false statement to a federal government agency.

The government points out that "[t]he most straightforward proof is the guilty verdict on Count 2[,]" which alleged that Louis Kealoha testified falsely in Mr. Puana's criminal trial that the person depicted in the video was Puana. This is a misplaced attempt by the government to tether the conspiracy conviction with the jury's guilty verdict in Count 2. This is because the conviction in Count 2 was for Attempt to Obstruct an Official Proceeding. While it is true that Mr. Nguyen was convicted in Count 2 via a *Pinkerton* theory of liability, the jury also specifically rejected attempt to obstruct an official proceeding as an object of the conspiracy. Thus, it is somewhat inaccurate for the government to state that "the jury found beyond a reasonable doubt that Louis Kealoha's false identification of Puana was 'in furtherance of the conspiracy' and 'fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.'" Dkt. No. 978 at 3. This is because Court's Instruction No. 21 requires that the "[other] crime" committed by (in this case) co-conspirator Mr. Kealoha, must have been committed "in order to further or somehow advance the goals or objectives of the conspiracy[.]" Dkt. No. 824 at 32 (jury instructions p. 31). Again, the jury did not find attempt to obstruct an

9

official proceeding to be an object of the conspiracy.

The jury's verdict constitutes an inconsistent verdict. As to Mr. Nguyen, the logical interpretation is that the conspiracy conviction, as well as his convictions in Counts 6 and 8 (for Attempted Obstruction of Justice), represents only an agreement to cover up the crimes separately committed by others. The *Pinkerton*-liability conviction in Count 2, for Mr. Kealoha's actions as Mr. Nguyen's agent in the conspiracy, is what makes the verdict inconsistent.

It is respectfully submitted that the net effect of the jury's verdict should be interpreted differently and independently as to each defendant. This would not only comport with the guidelines, but with the facts of the case and common sense as well.

Guidelines

    A.    Objection to Role in the Offense

When the Court ruled that the applicable guidelines were governed by USSG §2J1.2, rather than USSG §2H1.1, the PSR included an enhancement that Mr. Nguyen, as a police officer, abused a position of public trust. This enhancement was not included in the draft PSR guidelines. In particular, the PSR states as follows:

> Pursuant to USSG §3B1.3, a 2-level increase is applied if the defendant abused a position of public or private trust, in a manner that significantly facilitated the commission or concealment of the offense. "Public or private trust" refers to a position of public or private trust

characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference). USSG §3B1.3, Application Note 1. Police officers are afforded a public trust to enforce the law, because the public expects that police officers will not violate the laws they are charged with enforcing. United States v. Foreman, 926 F.2d 792, 796 (9th Cir. 1990) (applying enhancement to a police officer who displayed her badge to other police officers questioning her about transporting drugs through an airport). Since police officers clearly occupy positions of public trust, the relevant inquiry is whether the defendant used a police officer's special knowledge or access to facilitate or conceal the offense. United States v. Baker, 82 F.3d 273, 277 (8th Cir. 1996). In this case, the defendant abused his position as a member of the CIU by participating in a conspiracy to frame G. Puana for the theft of the Kealohas' mailbox, which ultimately led to G. Puana's false arrest and criminal trial. In this capacity, the defendant secretly removed the hard drive from the video surveillance video system at the Kealohas' residence prior to any official HPD report, assisted in the improper processing of the surveillance video, performed searches on confidential databases for information regarding G. Puana, and participated in CIU's continuous 24-hour surveillance of G. Puana for the week leading up to his arrest. He also lied to the grand jury by falsely identifying G. Puana as the mailbox thief, about Silva's retrieval of the hard drive, and his communications with Silva. Therefore, a 2-level increase is applied.

PSR at 32-33. Mr. Nguyen objects to the application of this enhancement.

On its face and at first glance, the enhancement would seem applicable given Mr. Nguyen's status as a police officer at the time. However, that is not the end of the inquiry. As the probation office points out, "the relevant inquiry is whether the defendant used a police officer's special knowledge or access to facilitate or conceal the offense." *Id.* (citing *United States v. Baker*, 82 F.3d 273, 277 (8th Cir. 1996)).

11

Mr. Nguyen was a career footman. The government's repeated attempts to characterize any member of HPD's CIU as an "elite" or "secret" police force member is misguided and misplaced. Mr. Nguyen neither possessed, nor used, any special knowledge or access. Furthermore, the probation office's position that "[Mr. Nguyen] abused his position as a member of the CIU by participating in a conspiracy to frame G. Puana for the theft of the Kealohas' mailbox, which ultimately led to G. Puana's false arrest and criminal trial," similarly belies the evidence. Again, the jury's verdict does not support a conspiracy to frame Mr. Puana. Furthermore, even if the following conclusion by the probation office is true, that "the defendant secretly removed the hard drive from the video surveillance video system at the Kealohas' residence prior to any official HPD report," there is nothing illegal about collecting evidence prior to an official report being generated. There was also no evidence that Mr. Nguyen "assisted in the improper processing of the surveillance video[.]" Indeed, he does not possess any kind of specialized knowledge in that regard. There was also no evidence that he "performed searches on confidential databases for information regarding G. Puana[.]" In fact, the evidence from the "burn bag" is proof that he did not perform such searches. As to the probation office's statement that he "participated in CIU's continuous 24-hour surveillance of G. Puana for the week leading up to his arrest[,]" that was something Mr. Nguyen was ordered to do. He was a footman. It

is not evidence which supports an abuse of position of trust enhancement.

The probation office also contends that Mr. Nguyen "lied to the grand jury by falsely identifying G. Puana as the mailbox thief, about Silva's retrieval of the hard drive, and his communications with Silva." These contentions are not necessarily true. The Court's instructions as to Count 6 did not require the jury to find that Mr. Nguyen lied about the retrieval of the hard drive <u>and</u> that Mr. Puana was the person in the video. Dkt. No. 824 at 39 (jury instructions p. 38). It only required the jury to find that a false statement was made, and for them to agree which one was false. Furthermore, with respect to the allegations that Mr. Nguyen was the first person to identify Mr. Puana as the mailbox thief, in its closing argument, the government repeatedly accused Mr. Kealoha of not stating that it was his opinion that it was Puana in the video. By contrast, Mr. Nguyen repeatedly told the grand jury that it was just his opinion that the person in the video was Puana:

A:   So from my opinion I observed the person in the video to be a male.

* * *

Q:   Did you recognize that person?

A:   In my opinion, I did recognize that person.

Q:   Who did you recognize it to be?

A:   When I saw it, in my mind I was that's Uncle Gerry.

13

* * *

Q:   S you're saying by the way the individual walked you made a determination it was Uncle Gerry?

A:   In my opinion, yes.

* * *

Q:   Well, what was it about the height of the individual on the video that caused you to believe it was Uncle Gerry's height?

A:   In my opinion, and when I looked at the picture I --

Q:   How tall was Uncle Gerry?

A:   Uncle Gerry has to be maybe a little taller than I am.

* * *

Q:   A man who's 5'7 who extends his arms and walks with his arms swaying back and forth, those were the two characteristics that caused you to believe that the person was Gerard Puana?

A:   To me, yes. In my opinion, yes.

U.S. Trial Exhibit 75-13 at 53-55. What this adds up to, in short, is that Mr. Nguyen did not use (or abuse, rather) any special knowledge or access to facilitate the offense. He did not proceed to arrest Puana after "identifying" him as the mailbox thief. He simply stated his opinion and let the powers that be investigate and make the command decisions. In fact, it is undisputed that Detective Dru Akagi gave the order to arrest Puana after Mrs. Kealoha identified him in the video. The enhancement under USSG §3B1.3 does not apply.

14

**B.**     Objection to Destruction or Alteration of an Essential or Especially
Probative Record

With respect to the enhancement under USSG §2J1.2(b)(3)(B), in addition to

the objections as stated in his PSR objections (Dkt. No. 917) Mr. Nguyen wishes to

respectfully respond to the probation office's statement that "this case involved

extensive coordination amongst the defendants and other coconspirators from at

least June 2013 (the date of the alleged mailbox theft) through May 2016 (when

the defendant testified falsely before the federal grand jury), which was

documented through phone records. The jury's verdict does not support the finding

of a conspiracy, or extensive coordination, from the date of the mailbox theft

through the date that Mr. Nguyen testified before the federal grand jury. Once

again, the jury's verdict supports the finding of a cover up conspiracy, not a

conspiracy to frame Puana. The enhancement under USSG §2J1.2(b)(3)(B) does

not apply.

**C.**     The Appropriate Guidelines

Mr. Nguyen has conceded that the base offense level is 14. He also concedes

that a 3-level enhancement for substantial interference with the administration of

justice is appropriate. This brings the total offense level to 17. Coupled with Mr.

Nguyen's criminal history category of one (I), the guideline range of imprisonment

is 24 to 30 months.

The Nature and Circumstances of the Offenses

This Honorable Court listened to, and knows the evidence in this case well. For those reasons, the trial testimony will not be regurgitated here. Obviously, not all the evidence presented by the government was necessarily proven just because there were convictions in this case. In its sentencing memorandum, the government has highlighted certain parts of the evidence. Mr. Nguyen respectfully responds as follows.

June 27, 2011 Alleged Search of Puana's Home. The only evidence that Mr. Nguyen searched Puana's home came from Jaunette Demello. Her testimony was not credible. Ms. Demello's testimony stood in stark contrast to her own statements to the FBI. She claimed not to recognize Mr. Nguyen and his wife at the time, Maile, then later said she did. Ms. Demello claimed Mr. Nguyen was in uniform and saw his name plate. She told the FBI he was in plainclothes. Ms. Demello said she recognized Mr. Nguyen in the FBI photographs. She did not. She specifically could not identify him from their photographs. Ms. Demello could not make an in-court identification of Mr. Nguyen, but claimed to have recognized him in an elevator at court. There were no police officers who corroborated Ms. Demello's claims of a search. Ms. Demello was not credible and she was the only evidence that Mr. Nguyen searched Puana's home.

June 19, 2013 Questioning of Florence Puana. The government continues to

assert that Mr. Nguyen was sent to Mrs. Puana's deposition to gather information about Mr. Puana's car. This is a ludicrous position. To think that a police officer would need to ask a person what kind of car they drive in order to figure out what kind of car they drive defies common sense. Furthermore, the government's own exhibit (75-13D at 57) proves that Mr. Nguyen already knew what kind of car Mr. Puana drove. Finally, Mrs. Puana did not say anything about Mr. Nguyen's questions until Mr. Puana's lawyer came to her house asking about it one year later. And then she happened to be mistaken about the color of the car that she rode in every day. Finally, Mr. Nguyen had every opportunity to view Mr. Puana's car for himself. It is not credible testimony.

Identifying Puana in the Video. It is difficult to understand the government's argument that Mr. Nguyen was the first to identify Puana in the video. Especially since he took no action with this information. Mr. Nguyen did not arrest Puana. Mr. Nguyen provided this information to Niall Silva, but not to the detective running the investigation, Dru Akagi. Similarly, with respect to the "video viewings at the Kealoha residence," Mr. Nguyen did not attempt to influence anybody's opinion about who was in the video.

The nature and circumstances of Mr. Nguyen's case are not as the government submits. It is undisputed that he received zero benefit from the conspiracy, even as the government views it. He received nothing of monetary or

17

professional value. He was never promoted. The worst that can be said of Mr. Nguyen with respect to the nature and circumstances of the case is that he was guilty of trying to cover up the crimes of others -- for that is what the jury convicted him of.

The History and Characteristics of Mr. Nguyen

The PSR does an excellent job of highlighting Mr. Nguyen's history and characteristics. Many character letters in support of Mr. Nguyen are attached as exhibits for this Court's review. Here, Mr. Nguyen wishes to highlight his complete lack of any prior criminal history. He also has no history of substance abuse or violence. He had a small anxiety issue, but has otherwise performed excellently on both pretrial and post-trial release.

//

//

//

//

//

//

//

//

//

Conclusion

At the end of the day, Mr. Nguyen's convictions are related to a "cover up." The government is unfairly trying to squeeze too much blood out of a verdict which should be interpreted differently as to each defendant. Mr. Nguyen was a footman. Multiple witnesses testified at trial that HPD is "para-military" -- the implication being that, if you are given an order by a superior officer, then you follow that order. No questions asked. Mr. Nguyen was as low-ranking as a police officer could be. He did what he was told. His circumstances are vastly different from his high-ranking co-defendants. His sentence should be as well.

DATED:  Honolulu, Hawai'i, March 12, 2020.

Respectfully submitted,

MIYOSHI & HIRONAKA, LLLC
Attorneys at Law

By: _____
RANDALL K. HIRONAKA

Attorney for Defendant
MINH-HUNG "BOBBY" NGUYEN

19